UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA BEESON, et al., | No. C-09-2776 SC |
| Plaintiffs, | |
| v. | ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |
| FIREMAN'S FUND INSURANCE COMPANY, INC., a corporation, and DOES 1 through 50, inclusive, | |
| Defendants. | |

**I.  INTRODUCTION**

This suit arises out of a dispute between Defendant Fireman's Fund Insurance Company, Inc. ("FFIC"), and its present and former employees, as well as their beneficiaries ("Plaintiffs").  The dispute relates to investment advice that was provided to Plaintiffs by non-parties to this suit, who were allegedly selected and retained by FFIC.  See Notice of Removal, Docket No. 1, Ex. B ("FAC").  Now before the Court are two related motions that both turn on how this dispute is characterized.  FFIC alleges that this suit is properly characterized as a suit under the Employee Retirement Income Security Act of 1974 ("ERISA").  See Notice of Removal.  On this basis, it removed the action from state to federal court, id., and on this basis, it now moves the Court to dismiss Plaintiffs' claims as preempted, See Mot. to Dismiss ("MTD"), Docket No. 6.  Plaintiffs contend that this

action is not properly characterized as an ERISA suit, and that this Court therefore lacks jurisdiction over Plaintiffs' state law claims. Plaintiffs have brought a motion to remand the action back to Marin County Superior Court. Mot. to Remand ("MTR"), Docket No. 10.

Plaintiffs have submitted an Opposition to FFIC's Motion to Dismiss, Docket No. 14 ("Pls.' Opp'n"), and FFIC has opposed Plaintiffs' Motion to Remand, Docket No. 12 ("FFIC Opp'n"). Each party submitted a Reply in support of their respective Motions. Docket Nos. 15 ("Pls.' Reply"), 16 ("FFIC Reply"). Having considered the papers submitted by each Party, the Court concludes that Plaintiffs' claims should not be characterized as claims within the scope of ERISA, and GRANTS Plaintiffs' Motion to Remand. The Court does not reach FFIC's Motion to Dismiss.

## II.  BACKGROUND

Plaintiffs trace the origin of this dispute back to FFIC's efforts to gradually shrink its workforce, starting from the mid-1990s. FAC ¶ 1. To this end, FFIC promoted early retirement among its employees, and allegedly selected and retained investment advisors to work with their employees and assess the employees' retirement options. Id. ¶¶ 2-3. Among the advisors retained by FFIC were Gary Armitage, Jeffrey Guidi, their company AGA Financial LLC, and a broker dealer called E-Planning Securities Inc. (collectively, "Financial Advisors"). Id. ¶ 12. FFIC sponsored seminars for its employees that were led by the Financial Advisors, distributed flyers announcing these seminars,

2

and generally encouraged employees to make use of the Financial Advisors' services. Id. ¶ 14. During this time, FFIC was apparently the sponsor and/or administrator of an ERISA retirement plan (the "Plan"), of which Plaintiffs were participants. See id. ¶ 14; Notice of Removal ¶ 5. Neither party articulates any details of this Plan.

The Financial Advisors directed Plaintiffs to retire earlier than planned, take their retirement benefits in lump-sum distributions rather than through an annuity, take early and high distributions from their IRAs, and take out mortgages or home equity lines of credit on their properties. FAC ¶ 19. The Financial Advisors told Plaintiffs that they could retire earlier and earn more by investing their assets with the Financial Advisors. Id. ¶ 18. Unfortunately, the portfolios recommended by the Financial Advisors included unsuitable and high-risk real-estate investments, unsecured notes, various entities controlled by James S. Koenig (who Plaintiffs contend was previously convicted of various fraud-related counts), and entities in which the Financial Advisors themselves had an undisclosed interest. Id. ¶ 19. Some of the entities were even part of an alleged Ponzi scheme. Id. In addition, Plaintiffs contend that FFIC allowed the Financial Advisors to access many of Plaintiffs' financial profiles, including detailed information about Plaintiffs' financial accounts, through "financial analysis" sessions that followed the seminars. Id. ¶¶ 16-17.

Plaintiffs followed the Financial Advisors' recommendations, and transferred much of their assets, including assets that had

previously been held in their FFIC Plan accounts, to the investments identified by Financial Advisors. Id. ¶ 20. These investments turned sour in early 2008, and Plaintiffs stopped receiving returns. Id. ¶ 21. Shortly thereafter, several of the Financial Advisors were indicted on suspicion of running a Ponzi scheme, and in some cases declared bankruptcy. Id. ¶ 3, 4, 19 & n.1. Plaintiffs have therefore filed suit against FFIC as the "sponsor" and "promoter" of the Financial Advisors, raising state law claims that FFIC acted negligently and fraudulently in retaining the Financial Advisors to advise Plaintiffs as to their retirement investments. Id. ¶ 4. FFIC removed the suit to this Court, claiming that Plaintiffs' claims could have been brought under ERISA and therefore present a federal question. See Notice of Removal.

### III. Legal Standard

"Federal Courts are courts of limited jurisdiction," and a cause of action is presumed to lie outside of this limited jurisdiction until the party asserting jurisdiction establishes the contrary. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Generally, a "cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co v. Taylor, 481 U.S. 58, 63-64 (1987). However, where the court determines that the real nature of a cause of action is one that has been "displaced" by the comprehensive enforcement mechanisms of ERISA § 502(a), 29 U.S.C. § 1132(a), then the "extraordinary

4

pre-emptive power" of ERISA provides federal jurisdiction. Id. at 64. This is because "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." Id. at 66. If, on the other hand, the court concludes it either lacks jurisdiction or that removal procedures were improper, then it may remand the action back to the state court. See 28 U.S.C. § 1447(c). If FFIC successfully establishes subject matter jurisdiction over one of Plaintiffs' causes of action, then this Court will have supplemental jurisdiction over all claims that are transactionally related. See Gibson v. Chrysler Corp., 261 F.3d 927, 935 (9th Cir. 2001).

**IV. DISCUSSION**

   **A. The Proper Standard for Determining Subject Matter Jurisdiction**

There are two distinct doctrines that determine whether a cause of action is preempted under ERISA, and these two doctrines have substantially different implications. The first doctrine is "complete preemption." This occurs when a complaint asserts state law claims that fall within the scope of one of the causes of action of ERISA § 502(a), 29 U.S.C. § 1132(a). See Toumajian v. Frailey, 135 F.3d 648, 654 (9th Cir. 1998). Such state law claims, however presented, must be reconstrued as claims under ERISA for the purpose of determining subject matter jurisdiction. Id. The second doctrine, sometimes referred to as "conflict preemption," stems from ERISA § 514(a), 29 U.S.C. § 1144(a), which

5

is ERISA's preemption provision. This section states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described" by the statute. 29 U.S.C. § 1144(a); Toumajian, 135 F.3d at 654 n.3. ERISA therefore presents two separate senses in which a cause of action may be "preempted:" (1) it will be preempted by § 502(a) if it can be construed as a cause of action under § 502(a); or (2) it will be preempted by § 514(a) if it "relates to" an employee benefit plan. Id. at 654-55.

The Parties disagree as to the proper standard for determining whether this Court has subject matter jurisdiction. Plaintiffs contend that the two types of preemption are two prongs of the same test, and that in order to establish subject matter jurisdiction and block its Motion to Remand, FFIC must establish both complete and conflict preemption. MTR at 6. Indeed, the Ninth Circuit has previously suggested that both aspects of preemption are necessary to confer jurisdiction upon a federal court. Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1216 (9th Cir. 2000) ("ERISA . . . permit[s] the defendant to remove despite the well-pleaded complaint rule, if two circumstances exist: "(1) ERISA preempts the plaintiff's cause of action and (2) the cause of action falls within the scope of [§ 502(a)]."); Buster v. Greisen, 104 F.3d 1186, 1188 (9th Cir. 1997) ("ERISA 'completely preempts' a state law claim only when it both preempts the claim under [§ 514(a)] and displaces the claim with its civil enforcement provision [§ 502(a)].").

However, FFIC claims that in order to establish federal

6

1  jurisdiction, it is only necessary to show preemption under §
2  502(a), i.e., to show that Plaintiffs would have standing to bring
3  the causes of action under ERISA. FFIC Opp'n at 6-7. They refer
4  to a recent Supreme Court decision that rejects an argument that
5  preemption under § 514(a) is required to establish federal
6  jurisdiction, in addition to § 502(a) preemption. Aetna Health
7  Inc. v. Davila, 542 U.S. 200, 214 n.4 (2004). The Court simply
8  stated that "a state cause of action that provides an alternative
9  remedy to those provided by the ERISA civil enforcement mechanism
10 conflicts with Congress' clear intent to make the ERISA mechanism
11 exclusive." Id. Davila therefore strongly suggests that the
12 question of preemption under § 514(a) is irrelevant to the
13 question of subject matter jurisdiction.
14    This Court concludes that the question in this case properly
15 turns on whether Plaintiffs' claims can be construed as causes of
16 action arising under ERISA § 502(a). Because this Court
17 ultimately concludes Plaintiffs' claims should not be so
18 construed, it need not reach the question of preemption under
19 § 514(a). The question of whether Plaintiffs' claims "relate to"
20 an ERISA plan under § 514(a), and are nullified by ERISA's
21 preemption provision, is necessarily left for a state court. As
22 the Ninth Circuit has explained,

> [I]f the doctrine of complete preemption [under § 502(a)] does not apply, even if the defendant has a defense of "conflict preemption" within the meaning of [§ 514(a)] because the plaintiff's claims "relate to" an ERISA plan, the district court, being without subject matter jurisdiction, cannot rule on the preemption issue. The district court lacks power to do anything but remand the case to the state court where the [§ 514(a)]

7

1 preemption issue can be addressed and resolved.
2 <u>Toumaijian</u>, 135 F.3d at 655 (citations and internal quotation
3 marks omitted).

   **B.   Whether Plaintiffs Have Stated A Claim Under § 502(a)**

5 Section 502(a) of ERISA, 29 U.S.C. § 1132(a), includes a
6 total of four causes of action that can be brought by plan
7 participants or beneficiaries. Actions may be brought:

> (1) by a participant or beneficiary--
>     (A) for the relief provided for in subsection (c) of this section, or
>     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [29 U.S.C. § 1109];
> (3) by a participant, beneficiary, or fiduciary
>     (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or
>     (B) to obtain other appropriate equitable relief
>         (i) to redress such violations or
>         (ii) to enforce any provisions of this title or the terms of the plan;
> (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 105(c) [29 U.S.C. § 1025(c)];

20 29 U.S.C. § 1132(a).

21 FFIC has argued that Plaintiffs have stated the basis for
22 claims under subsections (2) and (3), and that this Court
23 therefore has subject matter jurisdiction over this suit. FFIC
24 Opp'n at 9-14; MTD at 18-25. FFIC has not suggested that
25 subsections (1) or (4) apply.

   **1.   Section 502(a)(2)**

27 FFIC first argues that Plaintiffs' claims are preempted

8

1  because they fall within the scope of ERISA § 502(a)(2), 29 U.S.C.
2  § 1132(a)(2), which allows participants to bring suit for injuries
3  caused by breaches of fiduciary duty under ERISA § 409, 29 U.S.C.
4  § 1109.  MTD at 18-22.  Section 409 reads as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . .

29 U.S.C. § 1109(a).

Section 502 therefore only allows Plaintiffs to sue to enforce § 409, which in turn only provides that fiduciaries shall be liable to "the plan" for breaches of duty, rather than to individual plaintiffs personally.  These sections are meant to allow participants "to bring actions on behalf of the plan," to ensure that "'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries."  LaRue v. DeWolff, Boberg & Assocs., 128 S. Ct. 1020, 1024 (2008) (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985)).  The fiduciary relationship in play is one "with respect to the plan," and the plan is "the victim of any fiduciary breach and the recipient of any relief."  Id.  For this reason, the Supreme Court had long read sections 409 and 502(a) to prohibit individual causes of action brought by participants unless brought on behalf of the entire plan.  Russell, 473 U.S. at 142.

In its recent LaRue decision, the Supreme Court slightly modified its prohibition on individual § 502(a)(2) actions, to

9

accommodate the growing predominance of "defined contribution" plans. 128 S. Ct. at 1025. Under these plans, participants are entitled to the value of individual accounts, "which is largely a function of the amounts contributed to that account and the investment performance of those contributions," in contrast to the traditional "defined benefit" plan, which ensures a fixed level of income for participants. Id. at 1022 n.1. The Court concluded that individual participants could bring suit to challenge breaches of fiduciary duty that injured individual accounts, rather than plan assets as a whole, because "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to person tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." Id. at 1025-26. However, the Court emphasized that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries . . . ." Id. at 1026. Consequently, plaintiffs still must show an injury to a plan or plan account to bring suit under this subsection.

Plaintiffs here are suing to recover for injuries that were suffered through out-of-Plan investments, which had been purchased with funds removed from FFIC's Plan as well as funds that had no connection with the Plan at all. FAC ¶ 19. Plaintiffs have not articulated an injury to the Plan -- either as a whole, or to its individual accounts. Therefore, the Court cannot construe Plaintiffs' suit as a suit to recover for injuries to the Plan. Plaintiffs have not alleged that Plan assets were mismanaged in any way, or that at the time they withdrew assets from the Plan,

the value of the Plan was at all diminished by breaches of fiduciary duty.[1] Rather, Plaintiffs have brought suit because they personally received a slew of poor (or fraudulent) investment advice from the Financial Advisors. See FAC ¶¶ 1-4. The only relationship to the Plan, according to the FAC, is that the Financial Advisors directed Plaintiffs to invest all available assets with the Financial Advisors, including (but not limited to) assets that were held in Plan accounts at the time the advice was given. See FAC ¶19. Even though LaRue would give Plaintiffs a right to bring suit under ERISA to recover the value of individual accounts that had been wrongfully diminished by fiduciary misconduct, it does not purport to give them a right to bring suit to recover the value of assets that were poorly invested after they were withdrawn from Plan accounts.

### 2. Section 502(a)(3)

Section 502(a)(3) is ERISA's "catchall" cause of action for violations of fiduciary duty. This subsection "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere remedy." Varity Corporation v. Howe, 516 U.S. 489, 512 (1996). Unlike § 502(a)(2), this subsection only allows for equitable relief, but it allows plaintiffs to bring suit for breaches of duty beyond the mismanagement of plan assets. See 29 U.S.C. § 1132(a)(3); Varity,

---

[1] It is irrelevant that the value previously invested with the Plan may in some cases be a measure of the harm suffered by Plaintiffs. C.f. Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 453 (2003) (finding that reference to the amount of plan benefits in order to calculate damages was not enough to establish conflict preemption).

11

516 U.S. at 511. For example, plaintiffs may invoke this provision to seek equitable remedies for a fiduciary's breach of the duty of loyalty. Farr v. U.S. West Commc'ns, Inc., 151 F.3d 908 (9th Cir. 1998).

As the Ninth Circuit has noted, a cause of action under § 502(a)(3) exists only insofar as plaintiffs are seeking "relief as participants, beneficiaries, or fiduciaries" to "redress any violations or enforce any provisions of ERISA." Abraham v. Norcal Solid Waste Sys. Employee Stock Ownership Plan and Trust, 265 F.3d 811, 824-25 (9th Cir. 2001) (quoting Toumajian, 135 F.3d 656). The plaintiffs in Abraham sold stock to their company's Employee Stock Ownership Plan ("ESOP") for cash and long-term notes, and brought suit against the ESOP when it defaulted on its indebtedness to the plaintiffs. Id. The Ninth Circuit panel concluded that the plaintiffs' claim was based on independent rights that arose under state law in their capacity as note holders, as opposed to rights conferred to them as the ESOP's beneficiaries under ERISA. Id. at 824. Their state law claim therefore were not preempted. Id. (quoting Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1131 (9th Cir. 1992)).

The question of whether Plaintiffs' causes of action fall within the scope of ERISA therefore turns in part on whether the allegations raise questions as to FFIC's conduct as an ERISA fiduciary. Under § 3 of ERISA, one who provides financial advice is acting as an ERISA fiduciary to the extent that "he renders investment advice . . . with respect to any moneys or other property of such plan, or has any authority or responsibility to

12

do so." 29 U.S.C. § 1002(21)(A)(ii). In other words, providing financial advice as to the investment of non-plan assets is generally not a fiduciary duty under ERISA. FFIC relies heavily upon the Department of Labor's 1996 Interpretive Bulletin Relating to Participant Investment Education, 29 C.F.R. § 2509.96-1, which shows that the provision of investment advice, and the selection of third parties to provide investment advice, does sometimes fall within the ambit of ERISA. FFIC Oppn' at 12. The Bulletin states that "the designation of a person(s) to provide investment educational services or investment advice to plan participants and beneficiaries is an exercise of discretionary authority or control with respect to management of the plan." 29 C.F.R. § 2509.96-1(e).

However, the Bulletin is explicitly aimed at encouraging advice to beneficiaries who are "permitted to direct the investment of assets in his or her individual account," and to providing guidance to plan participants in selecting investment options "under such plans." 29 C.F.R. § 2509.96-1(b)-(c). It repeats the limitations of ERISA § 3, that one is a fiduciary whenever one renders advice "with respect to any moneys or other property of such plan . . . ." 29 C.F.R.§ 2509.96-1(c). The Bulletin does not suggest that ERISA rights or duties extend to the provision of financial advice as to how to invest non-plan assets in non-plan entities.[2] The Bulletin does not state that

---

[2] Although the Bulletin does cover the provision of "investment education" materials and "general financial and investment information," 29 C.F.R. § 2509.96-1(d), the Court finds that the financial advice that Plaintiffs here complain of -- i.e., the recommendation to invest in particular fraudulent entities --

13

1  providing investment advice (or hiring advisors to do so) will be
2  considered a fiduciary act simply because the advice may cause
3  participants to remove money from a plan.

4  If FFIC had hired the Financial Advisors to guide and educate
5  Plaintiffs for the selection of options under the Plan, or to
6  invest Plan assets, it would have been performing a purely ERISA
7  function.  See, e.g., Dudley Supermarket, Inc. v. Transamerica
8  Life Ins. and Annuity Co., 302 F.3d 1, 4 (1st Cir. 2002) (claims
9  that an ERISA fiduciary gave an ERISA plan inadequate investment
10 advice "fall squarely within the exclusive scope of" ERISA).
11 However, according to the FAC, FFIC did not hire the Financial
12 Advisors to guide Plaintiffs' selection of options and investments
13 within participant-directed account plans.  Rather, they directed
14 Plaintiffs to withdraw their Plan investments, and invest these
15 and all other available funds into separate, non-Plan entities.
16 FAC ¶ 19.  Plaintiffs have now attempted to assert claims that are
17 based upon their rights as investors in the entities promoted by
18 the Financial Advisors, rather than upon their rights as
19 participants and beneficiaries under ERISA.  Employees who had no
20 funds invested with FICC's Plan, or who choose not to remove money
21 from the Plan, would have just as much right to assert claims
22 against FFIC as Plaintiffs now claim.  The Court finds that,
23 because the Complaint does not allege that FFIC retained the
24 Financial Advisors to give advice about the investment of Plan

---

does not fall within these categories.  Although Plaintiffs note that the Financial Advisors did provide general investment advice, this advice was apparently not provided to help Plaintiffs select options under the Plan, and more importantly, this advice is clearly not the impetus behind Plaintiffs' claims.

14

assets, FFIC was not governed by the duties that ERISA establishes for plan governance, and Plaintiffs' asserted rights are based on state law rather than ERISA.

Case law has recognized a cause of action against an ERISA fiduciary for denying benefits to a participant by wrongly causing the participant to withdraw. However, the causes of action asserted by Plaintiffs do not fall within the scope of such claims. For example, in Varity, the Supreme Court found that beneficiaries had standing to bring a claim against a fiduciary, whom they alleged, "through trickery, led them to withdraw from the plan and forfeit their benefits." 516 U.S. 489, 492 (1996). The Varity plaintiffs had alleged that the fiduciary had deprived them of benefits by inducing them to switch to plans under a subsidiary (which was allegedly doomed to failure), and the fiduciary had done so by explaining that the benefits under the two ERISA plans would be identical. Id. at 493-94, 501. Similarly, in Farr, the plaintiffs' claimed that they were deprived of the benefits of a plan because the fiduciary advised them to withdraw from the plan and take a lump sum, but misrepresented the tax consequences of the lump sum option. 151 F.3d at 911. Here, however, Plaintiffs' claims do not depend upon their withdrawal from the Plan. Instead, Plaintiffs claim that they received the full benefit of their Plans, and were only injured after they withdrew their assets.[3] The advice that gives

---

[3] FFIC cites Morrison v. Moneygram Int'l, Inc., 607 F. Supp. 2d 1033 (D. Minn. 2009) as an example of an ERISA suit in which plaintiffs were seeking damages for injuries that occurred after plaintiffs cashed out of a plan. This Court does not agree with FFIC's reading of Morrison. The order does not suggest that

15

rise to their alleged injury was not related to the receipt or maintenance of their benefits under the Plan. It was related to the investment of all of Plaintiffs' available assets, including but not limited to assets removed from the Plan. FAC ¶ 19. Unlike Farr and Variety, the locus of these allegations lie beyond the scope of FFIC's ERISA duties.

## V. CONCLUSION

Plaintiffs' claims are not completely preempted by ERISA, and Plaintiffs have not brought a claim that is fully cognizable as a cause of action under ERISA § 502, 29 U.S.C. § 1132(a). The Court therefore concludes that it lacks subject matter jurisdiction over this cause of action. This action is hereby REMANDED to the Superior Court of California, in and for the County of Marin. The Court does not have jurisdiction to address the Motion to Dismiss filed by Defendant Fireman's Fund Insurance Company, Inc.

IT IS SO ORDERED.

August 31, 2009

UNITED STATES DISTRICT JUDGE

---

plaintiffs may bring a suit based on the way their assets were invested after withdrawing from a plan. Although the defendant, Moneygram, was able to show that the plaintiffs had actually cashed out of an ESOP (which held Moneygram stock) before Moneygram's stock plummeted, id. at 1040, the district court did not suggest that the plaintiffs' standing under ERISA was premised exclusively on a post-withdrawal injury. Indeed, the order does not even describe whether plaintiffs held company stock, or were injured in any way, after they cashed out.

16